**Lorraine ABEL, et al., Appellants,**

v.

**SURGITEK, a Division of Bristol–Myers Squibb Co., Bristol–Myers Squibb Co., and Medical Engineering Corp., Appellees.**

No. 04–97–00991–CV.

Court of Appeals of Texas,
San Antonio.

April 8, 1998.

Concurring opinion of Justice Rickhoff,
April 22, 1998.

Rehearing Overruled May 5, 1998.

Michael Gallagher, Sharon Sue McCally, Gallagher, Lewis & Downey, Houston, Daryl L. Moore, Houston, for Appellants.

G. Thomas Coghlan, Lang, Landon, Green, Coghlan & Fisher, P.C., San Antonio, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, for Appellees.

HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

This is an interlocutory appeal of a trial court's order granting a motion to transfer venue based on improper joinder. Appellees filed a motion to dismiss this appeal for lack of jurisdiction which we have taken with the case.[1] Finding that we have jurisdiction to

---

1. Appellees also filed a motion to take judicial notice of three documents. Each of these documents is contained in the clerk's record filed in

this appeal. See C.R. 94–99 (Memorandum of Medical Engineering Corporation, Bristol–Myers Squibb Company and Surgitek, Inc. in Opposi-

consider this appeal, we reverse the trial court's order and remand the cause to the trial court for further proceedings.

## BACKGROUND

The appellants are 106 plaintiffs who sued Surgitek, a Division of Bristol–Myers Squibb Co., Bristol–Myers Squibb Co., Medical Engineering Corp., Tolbert Wilkinson, M.D., and J.R. Smith, M.D., for injuries received as a result of allegedly defective breast implants. Appellees, Surgitek, Bristol–Myers Squibb Co., and Medical Engineering Corp., filed a motion to transfer venue, asserting that: (1) none of the events or omissions giving rise to any alleged claims occurred in Bexar County, Texas, other than the implant surgery performed on Janice Anders and/or Melanie Adler; (2) none of the three appellees had their principal office in Bexar County, Texas; and (3) none of the plaintiffs resided in Bexar County at the time their cause of action allegedly accrued except Janice Anders. The appellees further asserted that only 5 of the plaintiffs were residents of Texas[2] and venue was not established through a permissible joinder under section 15.003 of the Texas Civil Practice and Remedies Code ("Code") because the causes of action did not arise out of the same transaction, occurrence or series of transactions or occurrences and no common questions of law or fact existed. Finally, the appellees contended that venue should be transferred from Bexar County for the convenience of the parties and witnesses and in the interest of justice under section 15.002(b) of the Code. The appellants appeal the trial court's order granting the motion to transfer as to all plaintiffs except Anders and Adler.[3]

## JURISDICTION

■ The appellees contend that this court lacks jurisdiction to consider the merits of this appeal because it is an appeal from a venue determination. The appellants counter that this court has jurisdiction under section 15.003(c) of the Code because the trial court necessarily determined that joinder of the transferred plaintiffs was improper in granting the motion to transfer venue. We agree with the appellants.[4]

■ Any person who is unable to establish proper venue may not join or maintain venue for a suit as a plaintiff unless the person, independently of any other plaintiff, establishes that:

tion to Sydnie G. Smith, M.D., Joseph M. Connally, M.D., and Preston J. Chandler, M.D.'s Motions to Vacate Conditional Transfer Order–1 As it Applies to *Wanda Joyce Baker, et al. v. Bristol–Myers Squibb Company, et al.*); C.R. 123–25 (Response of Medical Engineering Corporation, Bristol–Myers Squibb Company and Surgitek, Inc. to Defendant Harlan Pollock M.D.'s Motion to Vacate/Sever Conditional Transfer Order–1); C.R. 114–19 (Memorandum of Medical Engineering Corporation, Bristol–Myers Squibb Company and Surgitek, Inc. in Opposition to Harlan Pollock, M.D., and Byron Brown, M.D.'s Motions to Vacate Conditional Transfer Order–1 As it Applies to *Francine Andrews, et al. v. Bristol–Myers Squibb Company, et al.*). Since the documents are contained within the appellate record to be considered in this appeal, we can discern no reason to take judicial notice of the documents independent of the appellate record, and we note that such judicial notice may not be permitted. *Penix v. State*, 748 S.W.2d 629, 630 (Tex.App.— Fort Worth 1988, no pet.); *National County Mut. Fire Ins. Co. v. Hood*, 693 S.W.2d 638, 639 (Tex. App.—Houston [14th Dist.] 1985, no writ). The appellants' motion to take judicial notice is DENIED.

2. The other plaintiffs were residents of Illinois, North Carolina, Wisconsin, Indiana, Virginia, South Carolina, Ohio, Arizona, and Michigan.

3. The appellees did not move for a transfer of venue as to the claims of Anders and Adler, whose claims were ordered to be maintained in Bexar County. The claims of Diane Moore were transferred to Tarrant County, and the claims of the remaining 103 plaintiffs were transferred to Dallas County.

4. We note that the appellees moved to transfer venue based on both (1) a failure to meet the joinder requirements of section 15.003(a); and (2) the convenience of the parties and witnesses and in the interest of justice under section 15.002(b). However, it is clear from the reporter's record that the trial court placed the burden of proof on the appellants and granted the motion to transfer based on its belief that the appellants failed to meet the joinder requirements of section 15.003(a). Had the trial court considered transfer under section 15.002(b), the appellees would have had the burden of proof, and the entire case would have been transferred to one other county of proper venue not splintered among three counties.

(1) joinder or intervention in the suit is proper under the Texas Rules of Civil Procedure;

(2) maintaining venue in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have the person's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for the person seeking to join in or maintain venue for the suit and the persons against whom the suit is brought.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a) (Vernon Supp.1998). Any party seeking joinder who is unable to independently establish proper venue may contest the trial court's decision denying joinder by interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(c) (Vernon Supp.1998). Conversely, no interlocutory appeal is available from a trial court's general venue determination or from a venue transfer based on the convenience of the parties and witnesses and the interest of justice. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(c), 15.064(a) (Vernon 1986 & Supp.1998); TEX.R. CIV. P. 87(6).

The appellees rely on a recent decision from the Texarkana court to support their position that because the trial court's order in this case transfers venue and does not grant or deny joinder, no interlocutory appeal is available. *Shubert v. J.C. Penney Company, Inc.*, 956 S.W.2d 634, 636 (Tex. App.—Texarkana 1997, pet. requested). In that case, the Texarkana court rejected a suggestion that an interlocutory appeal was available from a similar order based on this court's decision in *Masonite Corp. v. Garcia*, 951 S.W.2d 812 (Tex.App.—San Antonio 1997, pet. requested).

In *Masonite*, we held that the appellate court's review of a trial court's ruling on the propriety of an intervention/joinder issue necessarily requires a review of the underlying venue question. 951 S.W.2d at 817. We further held that the trial court's decision in that case was not subject to interlocutory appeal because the defendants were contesting a decision regarding transfer of venue and not a decision regarding joinder. 951

S.W.2d at 817. We emphasized that the appeals presented *no* issue regarding the trial court's determination that the nonresident plaintiffs did not independently establish venue. *Id.* The *only* issue in those appeals was whether the trial court transferred venue of the nonresident plaintiffs' claims to the *proper* counties. *Id.*

█ With respect to the section 15.003 argument, this case presents the issue that was not before our court in *Masonite:* whether an interlocutory appeal is available from a trial court's venue decision if it necessarily rests on whether a person, who was unable to independently establish venue, properly established joinder under section 15.003(a) of the Code. We hold that an interlocutory appeal is available under those circumstances. *See Bristol–Myers Squibb Co. v. Barner,* 964 S.W.2d 299, 300–301 (Tex. App.—Corpus Christi 1998, n. pet. h.)(appellate court has jurisdiction to consider joinder issue raised in motion to transfer venue and for severance which questioned propriety of joinder); *Bristol–Myers Squibb Co. v. Goldston,* 957 S.W.2d 671, 673 (Tex.App.—Fort Worth 1997, pet. requested)(holding appellate court has jurisdiction to consider ruling on motion to transfer venue challenging legality of joinder); *Surgitek, Inc. v. Adams,* 955 S.W.2d 884, 887–88 (Tex.App.—Corpus Christi 1997, pet. requested)(holding interlocutory appeal is available to review trial court's implicit findings that plaintiffs have failed to independently establish venue under section 15.003(a)). To hold otherwise would enable a defendant to defeat a plaintiff's right to interlocutory appeal by the label given to his motion. We are required to look to the substance of a motion to judge its character rather than its form or caption. *State Bar v. Heard,* 603 S.W.2d 829, 833 (Tex.1980); *Toubaniaris v. American Bureau of Shipping,* 916 S.W.2d 21, 23 (Tex. App.—Houston [1st Dist.] 1995, no writ). Since the trial court in this case could only transfer venue if the joinder of the plaintiffs was improper, we have jurisdiction to consider this interlocutory appeal.

**STANDARD OF REVIEW AND BURDEN OF PROOF**

█ We review a trial court's order denying joinder of a person unable to indepen-

dently establish proper venue by making an independent determination of whether joinder is proper from the record.[5] TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(c)(1) (Vernon Supp.1998). We do not apply an abuse of discretion or substantial evidence standard. *Id.* In adopting this standard of review, the legislature did not specify the nature of the record that we are to consider or the parties' respective burdens in challenging and establishing the joinder requirements under section 15.003(a). We must first examine and resolve these issues before we can undertake our review.

■ A trial court is required to make its determination of venue questions from the pleadings and affidavits. TEX. CIV. PRAC. & REM.CODE ANN. § 15.064 (Vernon Supp.1998). If the plaintiff adequately pleads and introduces prima facie proof that venue is proper in the county in which suit is filed, the trial court may not transfer venue. TEX.R. CIV. P. 87(3)(c). "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX.R. CIV. P. 87(3)(a). "Prima facie proof is not subject to rebuttal, cross-examination, impeachment or even disproof," and trial courts are not permitted to assess the credibility of conflicting affiants. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757 (Tex. 1993); *Rosales v. H.E. Butt Grocery Co.,* 905 S.W.2d 745, 749 (Tex.App.—San Antonio 1995, writ denied).

■ In a regular appeal, an appellate court is required to consider the entire record, including the trial on the merits. TEX. CIV. PRAC. & REM.CODE ANN. § 15.064 (Vernon Supp.1986); *see also Ruiz,* 868 S.W.2d at 757–58. The appellate court must uphold the trial court's determination if there is any "probative evidence" that venue was proper in the county where judgment was rendered. *Ruiz,* 868 S.W.2d at 758; *Rosales,* 905 S.W.2d at 750. Even if a preponderance of the evidence weighs against the trial court's ruling, we must affirm so long as any probative evidence can be found in the record to support the trial court's ruling. *Ruiz,* 868 S.W.2d at 758. In cases in which venue is maintained in the county in which suit is filed, we would only reverse if the prima facie proof is "destroyed" by conclusive evidence to the contrary. *Rosales,* 905 S.W.2d at 750; *see also Ruiz,* 868 S.W.2d at 757.

■ In an interlocutory appeal, we are directed to independently review the record. Since the trial court is required to determine venue questions from the pleadings and affidavits, the record would consist of those documents. Live testimony cannot be considered. *See Hearings on Tex. H.B. 6 Before the House Comm. on State Affairs,* 74th Leg., R.S. 8 (March 13, 1995)(statement of H.B. 6 author Rep. Bob Duncan: "And the hearings, we would not have the full-blown hearings like where there's live testimony. We maintain those provisions of the venue statute in the rules on the hearings on venue."); *see also Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 n. 4 (Tex.1992)(noting live testimony not allowed at a venue hearing); *Mellon Service Co. v. Touche Ross & Co.,* 946 S.W.2d 862, 866 (Tex.App.—Houston [14th Dist.] 1997, no writ)(same). One of the primary motivations for the 1983 amendments to the venue statute was to eliminate cumbersome and expensive trials on venue issues. *See Hearings on S.B. 32 Before the Senate Economic Development Committee,* 74th Leg., R.S. Tape 2 at 29 (Feb. 2, 1995)(noting lengthy venue trials before main trial as problem eliminated by 1983 amendments); *see also* Dan R. Price, *New Texas Venue Statute: Legislative History,* 15 ST. MARY'S L.J. 855, 876–77 (1984). The 1995 amendments were designed to further enhance and simplify the venue provisions, not to reenact the provisions previously eliminated as inefficient. *See Hearings on Tex. H.B.*

---

5. The Texas Constitution permits our appellate jurisdiction to be "prescribed by law." TEX. CONST. art. V, § 6. Under section 15.064 of the Code, the legislature has prescribed the standard for appellate review of venue determinations in regular appeals. TEX. CIV. PRAC. & REM.CODE ANN. § 15.064 (Vernon 1986). Although the wisdom of that standard was questioned by the Texas Supreme Court, the standard was adopted and followed. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757–58 (Tex.1993). Similarly, we follow the standard of review prescribed by the legislature in our consideration of interlocutory appeals under section 15.003.

*6 Before the House Comm. on State Affairs,* 74th Leg., R.S. 8 (March 13, 1995)(author of H.B. 6 Rep. Bob Duncan commenting that he did not perceive the venue hearing would be any different than the hearing under the existing venue laws). The record subject to our independent review will consist of the pleadings and affidavits, with the appropriate attachments. We must independently determine from that record whether the joinder requirements have been established. We will not engage in a fact-finding review by assessing the credibility of the affiants. *See Rosales,* 905 S.W.2d at 750–51. The plaintiffs' prima facie proof will be accepted as controlling unless that proof is "destroyed" by conclusive evidence to the contrary. *See Rosales,* 905 S.W.2d at 750.

In undertaking our review of the record, we must determine the meaning of the term "establish" in the context of section 15.003. In determining the legislature's intent in using the term "establish," we read individual words, phrases, and provisions in the context of the entire statute, and we follow the rules of grammar and common usage. *See Masonite Corp. v. Garcia,* 951 S.W.2d at 816; *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988).

The appellees contend that the word "establish" as used in section 15.003 requires the appellants to bring prima facie evidence to prove the requirements by a preponderance of the evidence. The appellants counter that establish does not require them to factually prove proper joinder.

The legislature did not contemplate any change in the nature of a venue hearing when it adopted the 1995 amendments to the venue provisions. *See Hearings on Tex. H.B. 6 Before the House Comm. on State Affairs,* 74th Leg., R.S. 8 (March 13, 1995). The same procedure should be followed where venue is challenged based on improper joinder as is followed where venue is challenged for other reasons. Under this procedure, prima facie proof is not subject to rebuttal, cross-examination, impeachment or even disproof, and trial courts do not assess the credibility of conflicting affiants. *Ruiz,* 868 S.W.2d at 757; *Rosales,* 905 S.W.2d at 749. This procedure ensures that we·do not

return to cumbersome and expensive trials on venue issues. Applying this procedure, it would be illogical to require the plaintiffs to prove the joinder requirements by a preponderance of the evidence, because the prima facie proof is accepted as controlling unless conclusively "destroyed" by evidence to the contrary. *See Rosales,* 905 S.W.2d at 750. We must independently review the pleadings and affidavits to determine whether the appellants made prima facie proof of the joinder requirements and, if so, whether the prima facie proof was "destroyed" by conclusive evidence to the contrary.

### PROPRIETY OF JOINDER

Because the appellants are unable to establish proper venue in Bexar County, they must first establish that joinder in the instant suit is proper under the Texas Rules of Civil Procedure in order to join or maintain venue in Bexar County. TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a)(1) (Vernon Supp. 1998). The appellees contend that joinder in not proper under rule 40 of the Texas Rules of Civil Procedure because the appellants failed to show that their claims arose out of the same transaction, occurrence or series of transactions or occurrences. The appellants counter that they are not required to make this showing because it is an alternative means of proving proper joinder under rule 40, citing *Surgitek, Inc. v. Adams,* 955 S.W.2d at 890.

Rule 40 provides as follows:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.

TEX.R. CIV. P. 40. In *Surgitek,* the Corpus Christi court held that a showing of the same transaction or occurrence is not required if the plaintiff can assert any right to relief jointly or severally. 955 S.W.2d at 890. The Corpus Christi court interprets the phrase "in respect of or arising out of the same transaction, occurrence or series of transac-

tions or occurrences" as applicable only when a plaintiff seeks a right to relief in the alternative. With due respect to our sister court, we think this is overbroad. *See* 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE §§ 5:30, 5:31, 5:33, 5:34 (rev.1992).

■ The first part of rule 40 describes the nature of the rights multiple parties may join in an action: joint, several or in the alternative. *See* 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE §§ 5:30, 5:31 (rev.1992). Regardless of the nature of the rights asserted, the parties must also prove the relatedness of the claims by showing that (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) a question or law or fact common to all of the claims will arise in the action. *See* 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE §§ 5:33, 5:34 (rev.1992).

■ The appellants had the burden of establishing that joinder was proper under rule 40. TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a) (Vernon 1998). With regard to the requirement that the claims arise out of the same transaction, occurrence, or series of transactions or occurrences under rule 40, Texas case law is sparse. *See* Michael A. Simpson and Derrick S. Boyd, *21st Century Venue: A Venue Rule for Texas Courts in the New Age of Complex Litigation*, 46 BAYLOR L. REV. 683, 704 (1994). However, the Texas rule is equivalent to the federal rule, and extensive federal case law interpreting the requirement does exist. *Id.* at 704–05. "Federal courts do not follow a rigid test in making this determination." *Id.* at 705. " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as on their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *see generally* 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE

§ 5:33 (rev.1992). "[A]ll reasonably related claims for relief by or against different parties may be tried in a single proceeding. Absolute identity of events is unnecessary." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974).

■ The appellants presented the following pleadings and affidavits as proof of proper joinder: (1) the affidavits of Anders and Adler, supporting their right to bring suit in Bexar County as the locale of their operations; (2) the documentation and memoranda filed before the federal judicial panel on multidistrict litigation wherein the appellees argued that common questions of law and fact in these types of cases exist, which was contrary to their arguments in their motion before the trial court; (3) the affidavit of Michael T. Gallagher, counsel of record for the appellants, stating that certain factual issues in all cases will be the same and that the same expert witnesses were designated in each case by the defendants; and (4) the defendants' designation of witnesses, listing 63 fact witnesses from various states and 32 health care providers, which was subject to further supplementation. We conclude that these pleadings and affidavits are prima facie proof that common questions of law or fact exist and that the claims are reasonably related and have a logical relationship, thereby satisfying the same transaction, occurrence, or series of transactions or occurrences requirement.

■ Having determined that the appellants satisfied the first joinder requirement, i.e, that joinder was proper under rule 40, we turn to the remaining joinder requirements.[6] The appellants presented affidavits and pleadings revealing that numerous fact and expert witnesses were designated from across the country. The affidavit of Michael Gallagher states that the same or similar designations of expert witnesses have been

6. Appellants contend that they were not required to present prima facie proof as to the remaining joinder requirements because the appellees' motion did not specifically deny a venue fact relating to those requirements. However, the appellees are only required to specifically deny those venue facts that are properly pleaded. *See* TEX.R. CIV. P. 87(3)(a). The appellants did not plead any venue fact relating to convenience, absence of undue prejudice and essential need other than commonality. The appellees did specifically deny commonality. In opposing the motion to transfer, appellants were required to present prima facie proof of each of the joinder requirements.

filed in each of the breast implant cases involving the appellees.

With regard to essential need, the appellants assert that essential need is "self-evident" in that the "use of one-by-one individual [trials] is not an option," quoting *In re Fibreboard Corp.*, 893 F.2d 706, 708 (5th Cir.1990). The appellants explain that there is an essential need "*to conserve judicial resources and prevent the multiplicity of suits in various cases in trying common issues.*" *See id.* Appellees counter that the alleged inefficiency of multiple trials cannot confer venue that otherwise does not exist.

■ We acknowledge that the legislature adopted essential need as a requirement for joinder to eliminate forum shopping by "piggy-backing" claims. *See Masonite Corp.*, 951 S.W.2d at 818. We further acknowledge that the legislature contemplated the potential splintering of lawsuits by requiring the claims of similarly situated plaintiffs against the same defendants to be tried in different counties. *See id.* However, we do not accept that the legislature intended to eliminate judicial economies of scale in dealing with breast implant litigation. As one commentator, who testified at the committee hearings, has stated, "[u]sually the reason for "essential need" will be the mutual support that plaintiffs joined together can give to the case (primarily financial and utilization of the best experts).... It will be the joinder and the cutting down on the costs, time, and other 'expenses' for discovery, experts, exhibits, pretrial hearings and conferences, and a multitude of other things which can be shared or pooled rather than each plaintiff (and each county) having to meet the full expense of suing all the defendants (or even one defendant) in a separate county." J. Patrick Hazel, *Jurisdiction and Venue in Texas*, STATE BAR OF TEXAS, ADVANCED PERSONAL INJURY LAW COURSE B–17–18 (1997).

■ The problem that was identified in *Polaris* is not present in this case. *See Polaris Inv. Management Corp. v. Abascal*, 890 S.W.2d 486 (Tex.App.—San Antonio 1994, orig. proceeding)(concurring opinion), *approved sub nom.*, 892 S.W.2d 860 (Tex. 1995). The amendments to the venue statutes now entrust appellate judges to recognize exercises of discretion by the trial court "that irremediably deprive litigants of significant substantive rights without any objective justification." *Id.* at 488. The appellants provided prima facie proof of essential need—an objective justification for joinder—by proving the need to pool resources against common experts and issues. The effect of the trial court's order in this case essentially recognizes that need with respect to 103 of the plaintiffs but deprives three plaintiffs of the necessary pooled resources. This cannot be the effect the legislature intended in imposing an essential need requirement. We conclude that the appellants met the burden of establishing an essential need, i.e., the need to pool resources.

■ The same evidence establishing the essential need requirement is also prima facie proof that maintaining venue in Bexar County would not unfairly prejudice the appellees. Since the witnesses that have been designated are from across the country, there is nothing unfairly prejudicial in having them testify in Bexar County as opposed to another Texas county.[7] The appellees have presented no evidence that conclusively establishes that maintaining venue in Bexar County is unfairly prejudicial. We conclude that appellants met their burden of establishing absence of unfair prejudice.

The appellants contend that Bexar County is a fair and convenient venue since the appellees will have to defend against two plaintiffs in Bexar County. The appellees counter that this cannot be the test for "fair and convenient" or the test will always be met. The appellees urge that we require a

---

7. We emphasize that in determining whether the plaintiffs in this case were properly joined for purposes of section 15.003, we only consider whether their joinder is proper for purposes of trying their claims in one Texas county as opposed to another Texas county. We do not consider whether their claims should properly be tried in Texas rather than another state. This issue is reserved for consideration in a motion to transfer based on *forum non conveniens*. It appears from the record in this case that such a motion has been filed but has not been considered by the trial court.

prima facie showing of the same factors used in proving fair and convenience under the *forum non conveniens* procedure.

 We decline to apply the *forum non conveniens* factors in determining whether the appellants have established Bexar County as a fair and convenient forum for purposes of joinder under section 15.003. When the legislature adopted the 1995 amendments to the venue provisions, it also added section 15.002(b), which one commentator has referred to as the "county *non conveniens*" provision. *See* J. Patrick Hazel, *Jurisdiction and Venue in Texas*, STATE BAR OF TEXAS, ADVANCED PERSONAL INJURY LAW COURSE B–13–14 (1997). The elements under section 15.002(b) are similar to the elements considered in a motion to transfer based on *forum non conveniens*. The difference is that section 15.002(b) involves a comparison of the convenience of trying a suit in different counties within Texas as opposed to the convenience of trying a suit in Texas rather than a different state. By adopting this provision, the legislature provided defendants with a means to address the fairness and convenience of trying a suit in different counties in Texas in the traditional *non conveniens* sense. We do not believe that the legislature intended to impose as extensive of a burden in requiring a showing of fairness and convenience under section 15.003(a)(4).

 We also disagree with appellants' contention that Bexar County is a fair and convenient forum simply because the appellees are required to defend against two Bexar County plaintiffs. However, we believe that the fact that a trial must occur in Bexar County establishes Bexar County as a fair and convenient forum when it is coupled with the evidence that the witnesses that have been designated are located across the country. Looking at the issue in the negative, this evidence establishes that it would not be unfair or inconvenient for the appellees to try the cases of the remaining plaintiffs in Bexar County. The witnesses and the attorneys would already be required to be present in the county.

 We recognize that under this fairness and convenience test, a plaintiff who is able to establish absence of unfair prejudice will generally be able to establish fairness and convenience. We do not believe that this undermines the legislature's resolution of the complaint made in *Polaris*. It merely recognizes that the two requirements are so similar that evidence supporting one will generally support the other. *Cf. Surgitek v. Adams,* 955 S.W.2d at 891 (concluding venue fair and convenient for same reason plaintiff established no unfair prejudice).

CONCLUSION

 In enacting section 15.003, the legislature sought to eliminate *Polaris*-style forum shopping by entrusting appellate judges "to recognize exercises of discretion that irremediably deprive litigants of significant substantive rights without any objective justification." *Polaris,* 890 S.W.2d at 488; *see also Masonite Corp.,* 951 S.W.2d at 817–18. In reviewing a trial court's order granting a motion to transfer venue based on improper joinder, we must independently review the pleadings and affidavits to determine whether the appellants made prima facie proof of the joinder requirements and, if so, whether the prima facie proof was "destroyed" by conclusive evidence to the contrary. In undertaking this review, we ensure that prima facie proof of objective justifications supporting joinder is introduced and that the prima facie proof of these justifications has not been "destroyed" by conclusive evidence to the contrary. Requiring defendants to conclusively "destroy" the prima facie proof recognizes that joinder is advantageous to the judicial system when it is not used solely as a tool for forum shopping but also ensures that a defendant has a means by which to refute the justifications for joinder where it has been used as a tactical maneuver.

We hold that the appellants met their burden of establishing the joinder requirements under section 15.003(a) by prima facie proof and that no conclusive evidence to the contrary was presented. Therefore, we reverse the order of the trial court granting appellees' motion to transfer venue based on improper joinder.

Concurring opinion by RICKHOFF, J.

Dissenting opinion by DUNCAN, J.

RICKHOFF, Justice, concurring.

If essential need is given its common meaning, it is impossible for intrastate plaintiffs to join mass tort litigation. Each out-of-county plaintiff, *e.g.* a Diane Moore from Collin County, would be required to maintain her individual suit in the county of surgery and each defendant would have to defend essentially the same case with different plaintiffs repeatedly across the state. This mechanical reading of essential need does not lead to a reasonable or fair outcome for complex litigation. Trial courts must recognize the need for mutual support and be free to balance the interests of economy for the courts and litigants against the danger of allowing joinder merely for a theoretically more sympathetic forum.

*Polaris* was an abusive joinder case in which puffing hyperbole enticed thousands of plaintiffs to Texas's most remote venue. *See Polaris Inv. Management Corp. v. Abascal,* 890 S.W.2d 486 (Tex.App.—San Antonio 1994, orig. proceeding) (Rickhoff, J., concurring), *leave denied,* 892 S.W.2d 860 (Tex. 1995). The case provoked an overreaction in the *Polaris* concurrence (panel member Judge Peeples wisely declined to join). Along with other abusive joinder cases, it made for the legislature's rather draconian essential need requirement. We must make the limits on joinder reasonable so intrastate plaintiffs can achieve mutual support, which in turn results in judicial economy.

I do not find it overly chauvinistic to recognize these out-of-state plaintiffs as *Polaris* forum shoppers. Eighty-five plaintiffs from Illinois traveled 1000 miles from their doctors, taking Illinois law and seeking the verdict of a Bexar County jury. As we indicated in footnote 7, the proper way to remove them is by granting a traditional forum non conveniens motion.

I join the majority because I believe it is impractical for intrastate plaintiffs to "go it alone," yet we must not thwart the legislative intent by failing to curb abusive joinder tactics.

DUNCAN, Justice, dissenting.

I agree with the majority's conclusion that we have jurisdiction over this appeal and thus concur in its judgment to that extent. But I must respectfully dissent from the majority's judgment reversing the trial court's order and remanding this case for further proceedings. The non-resident plaintiffs have not established an "essential need" for trying their claims in Bexar County.

The non-resident plaintiffs concede they cannot independently establish venue in Bexar County and must therefore show an "essential need" for their claims to be tried here. TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a)(3) (Vernon Supp.1998). They also recognize that because the legislature did not define "essential need," we must give the phrase its common meaning. As we stated in *Masonite,* we must construe the term employing the usual rules of statutory construction, striving to give effect to the underlying legislative intent and "follow[ing] the rules of grammar and common usage." *Masonite Corp. v. Garcia,* 951 S.W.2d 812, 816 (Tex.App.—San Antonio 1997, writ requested).

To meet their burden of establishing "essential need," the non-resident plaintiffs, citing *In re Fibreboard Corp.,* 893 F.2d 706, 708 (5th Cir.1990), argue that "the Fifth Circuit ... in *Fibreboard* accurately states the essential need to conserve judicial resources and to prevent the multiplicity of suits in various cases in trying common issues." I agree the conservation of judicial resources and the prevention of a multiplicity of suits involving common issues of law and fact are serious concerns and valid goals of a judicial system. But, as we recognized in *Masonite,* the expenditure of judicial resources on a multiplicity of suits involving common issues of law and fact was a "type of result ... contemplated by the legislature" since "[o]pponents and committee witnesses pointed out that while the legislation would curb *Polaris*-style forum shopping, it could also lead to inefficient and impractical splintering of lawsuits, by requiring the claims of similarly situated plaintiffs against the same defendants to be tried in different counties." *Ma-*

*sonite,* 951 S.W.2d at 818 (referring to *Polaris Inv. Management Corp. v. Abascal,* 890 S.W.2d 486 (Tex.App.—San Antonio 1994, no writ)). Indeed, in *Masonite,* section 15.003 "caused the claims of similarly situated plaintiffs against the same defendants to be splintered into sixteen lawsuits in sixteen different counties." *Id.* Here, by contrast, there will be only three.

As noted above, without positive guidance from the legislature, we must interpret "essential need" according to its common usage. *Id.* at 816 (citing TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988)). One definition of "essential"—the definition the parties have offered in their briefs, in fact—is "indispensably necessary; important in the highest degree; requisite." *Surgitek, Inc. v. Adams,* 955 S.W.2d 884, 890 (Tex.App.—Corpus Christi 1997, pet. requested) (quoting BLACK'S LAW DICTIONARY 546 (6th ed.1990)); *see also* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 425 (1988). But there is no evidence to establish, and the non-resident plaintiffs do not even argue, it is "indispensably necessary" that they be permitted to maintain their claims in Bexar County. They simply argue that it would be more efficient.

Given these circumstances, to classify either judicial efficiency, argued by the non-resident plaintiffs, or "the need to pool resources," adopted by the majority, as "essential need" thwarts the legislative intent underlying section 15.003 and the common usage of the legislature's chosen term. We must, therefore, affirm the trial court's order. Because the majority fails to do so, I respectfully dissent.